IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| VOXER, INC. and VOXER IP LLC, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | C.A. No. 25-872 (GBW) |
| | ) | |
| AMAZON.COM, INC., AMAZON WEB | ) | |
| SERVICES, INC., and TWITCH | ) | |
| INTERACTIVE, INC. | ) | |
| | ) | |
| Defendants. | ) | |

| | | |
|---|---|---|
| | ) | |
| VOXER, INC. and VOXER IP LLC, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | C.A. No. 25-873 (GBW) |
| v. | ) | |
| | ) | |
| GOOGLE, LLC and YOUTUBE, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' LETTER TO THE HONORABLE GREGORY B. WILLIAMS**
<u>**REGARDING PROTECTIVE ORDER DISPUTES**</u>

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jennifer Ying (#5550)
J. Layne Lancaster (#7616)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jying@morrisnichols.com
llancaster@morrisnichols.com

*Attorneys for Defendants Amazon.com, Inc.,*
*Amazon Web Services, Inc., and Twitch*
*Interactive, Inc.*

RICHARDS, LAYTON & FINGER, P.A.
Kelly E. Farnan (#4395)
One Rodney Square
920 North King Street
Wilmington, DE 19801
(302) 651-7700
farnan@rlf.com

*Attorney for Defendants Google, LLC and*
*YouTube, LLC*

March 4, 2026

Dear Judge Williams:

Defendants submit this letter to address two disputes concerning the proposed Protective Order ("PO," Ex. 1): (1) whether Voxer's Chief Executive Officer Irv Remedios should be allowed to access Defendants' "Confidential" material and (2) the permissible methods of transporting source code printouts. Defendants request an order that Remedios not be granted access to Defendants' Confidential material and that the parties be required to transport highly sensitive source code printouts by hand carry unless otherwise agreed upon. (*Id.* ¶¶ 7.2(b), 14.4 (Confidentiality) and ¶ 9(j) (Source Code).)

## I.    Voxer's CEO Should Not Get Access to Defendants' Confidential Material

Voxer's CEO Irv Remedios should not be allowed to access Defendants' Confidential material. Confidential material includes information that "qualifies for protection under Federal Rule of Civil Procedure 26(c), including, for example, non-public technical, financial, competitive, or other business information." (*Id.* ¶ 2.2.) Defendants propose that up to two in-house counsel can access Confidential material. (*Id.* ¶ 7.2(b).) Voxer proposes that its CEO, who is not a lawyer and is based outside the U.S., be allowed access to Confidential material. (*Id.*) But the risk of misuse or disclosure, and potential impact on witness testimony, outweigh any burden of non-disclosure to Voxer's CEO.

Voxer cannot dispute that Remedios is a competitive decisionmaker. "[C]ompetitive decision-making is the sort of disclosure risk that weighs heavily against granting access [to opposing party's confidential material]." *R.R. Donnelley & Sons Co. v. Quark, Inc.*, C.A. No. 06-032, 2007 WL 61885, at *2 (D. Del. Jan. 4, 2007). Voxer has 13 employees, and as CEO, Remedios manages Voxer's entire business. (D.I. 39 at 4-5 (25-872-GBW).) Voxer's own Rule 26(a) Disclosures represent that Remedios has extensive knowledge of, and involvement in:

> history, business, and products of Voxer; the development and marketing of Voxer and its technology; use of Voxer's technology and intellectual property by others, including Meta Platforms, Inc; communication with others, including Amazon, related to Voxer's technology and intellectual property; commercial success and other secondary indicia of nonobviousness of the Asserted Patents.

(*See, e.g.*, Ex. 2 at 4-5.) Remedios's declarations opposing Defendants' transfer motions also state that he has "similar or likely better information" than several former employees concerning Voxer's "early-stage creation of its App," "product management," "technical information," "financial information," "sales," and "marketing activities." (*See, e.g.*, D.I. 44 ¶¶ 11-13 (C.A. No. 25-872).) In short, it is undisputed that Remedios is a competitive decisionmaker at Voxer. There is a substantial risk that he could, if even inadvertently, misuse or disclose Defendants' Confidential material. *See* Ex. 3, *Bausch & Lomb Inc. v. SBH Holdings LLC*, C.A. No. 20-cv-01463, D.I. 47 (D. Del. Oct. 18, 2022) (denying access to confidential information where information could be provided to CEO and key decisionmakers); *Safe Flight Instr. Corp. v. Sundstrand Data Control Inc.*, 682 F. Supp. 20, 23 (D. Del. 1988) (precluding president from viewing opposing party's confidential information). Indeed, Judge Burke denied access to confidential information to a finance manager based on their mere access to the company's CEO

with a limited number of employees. *See* Ex. 3. Such is true here—Voxer is a small company where its CEO is heavily involved in the day-to-day decision-making of the company.

Remedios is also expected to be a testifying witness, as he has been identified on both sides' Rule 26 disclosures. (Ex. 2 at 4-5; D.I. 65, Ex. 15 at 7 (25-873-GBW).) Because Remedios is directly implicated in this dispute and is highly likely to be a critical fact witness, he should not be permitted to access Defendants' Confidential material before he testifies. *See* Ex. 4, *Shilpa Pharma, Inc. v. Novartis Pharms. Corp.*, C.A. No. 21-558 (D. Del. Dec. 2, 2021) (precluding access to confidential information where individual would be a fact witness while disqualification motion was pending).

Plaintiffs would not be harmed by Defendants' proposal. Plaintiffs would still be able to share Confidential material with their in-house counsel, and their outside counsel can access all information produced under the PO. *See PhishMe, Inc. v. Wombat Sec. Techs., Inc.*, C.A. No. 16-403, 2017 WL 4138961, at *9 (D. Del. Sept. 18, 2017) (courts readily conclude that "the outside counsel of a party's choice can adequately represent its interests").

Finally, if the Court disagrees and allows Remedios to access Defendants' Confidential material, Defendants propose that Remedios only be allowed to access Defendants' Confidential material from within the U.S. (Ex. 1 ¶ 14.4.) Plaintiffs' proposal that Remedios be able to access Confidential material from Canada should be rejected. There is no reason for Defendants' sensitive information to be taken outside the U.S. and this Court's jurisdiction, with the parties, documents, and key witnesses based in the U.S. *See United States v. Concord Mgmt. & Consulting LLC*, 404 F. Supp. 3d 67, 78 (D.D.C. 2019) ("The location restriction on U.S. sensitive discovery is particularly justified here given that the Court cannot enforce the terms of the protective order outside of the United States."). Defendants' proposed language would hold Mr. Remedios to the same standard as other individuals who access confidential material under the PO. *See* Ex. 5, *Data Engine Techs. LLC v. Google LLC*, C.A. No. 14-1115, D.I. 33 (D. Del. Apr. 8, 2015) (adopting provision that prevented protected material from being taken outside the U.S., even when employees may need to travel internationally).

## II. At the Producing Party's Election and Expense, Printed Source Code Should Only Be Hand-Carried

The parties agree that source code warrants the highest level of protection in the protective order. Voxer nevertheless insists on the use of a less secure method of transporting source code printouts in Section 9(j), despite Defendants agreeing to provide 5 copies. Defendants seek a provision allowing source code printouts to be transported by the receiving party via hand carry (*i.e.*, by (1) an individual authorized under the PO to access the source code, or (2) a private courier service, with the materials never left unattended) or by any other mutually agreed-upon method. Plaintiffs, by contrast, seek a provision that would allow them to unilaterally ship source code printouts via less secure methods than hand carry.

As an initial matter, the Court has discretion to impose restrictions on how parties may transport sensitive source-code printouts. *See, e.g.*, 7 Annotated Patent Digest § 41:63.60 (courts may restrict "how [source] code is actually produced to the requesting party"); Fed. R. Civ. P. 26(c)(1)(C) (court may "prescrib[e] a discovery method other than the one selected by the party

seeking discovery"). Consistent with that discretion, courts routinely adopt provisions designed to afford source code adequate security when transmitted during litigation. *See, e.g.*, *Valencell, Inc. v. Apple, Inc.*, 2016 WL 7217635, at *5 (E.D.N.C. Dec. 12, 2016) (declining to adopt proposed provision that "would allow [the producing party's] source code to be transported . . . without adequate safeguards and thereby expose the source code to the risks of being lost or stolen"). In many cases, that means hand-delivery. *See, e.g.*, *Telebuyer, LLC v. Amazon.com, Inc.*, 2014 WL 5804334, at *4 (W.D. Wash. July 7, 2014) (ordering hand-carry restriction over objection as the "sensitivity of the material outweighs [plaintiff's] inconvenience"); *AccuSearch Techs. LLC v. Google LLC*, No. 1:25-cv-00514 (D. Del. Nov. 6, 2025), D.I. 52 at 17 (requiring "hand carry") (Ex. 6); *Multifold Int'l Inc. v. Motorola Mobility LLC*, No. 1:23-cv-01173 (D. Del. Sept. 16, 2024), D.I. 56 at 20 (same) (Ex. 7); *Proxense, LLC v. Google LLC*, No. 6:23-cv-320 (W.D. Tex. Feb. 19, 2024), D.I. 62 at 10 (same) (Ex. 8).

Here, Defendants' proposal would ensure that should a party wish to have its own code transported via hand carry, that party will have the option to do so. Defendants' proposal also allows the parties to negotiate and agree to another mode of transport, like FedEx. Plaintiffs' proposal, by contrast, takes any room for collaboration off the table and asks the Court to rule—categorically—that source code printouts must be transmitted via *any* overnight courier service throughout the litigation. But "[t]here is no dispute that [the] secrecy [of Defendants' source code] is of enormous commercial value" or that inadequate protections can "cause catastrophic competitive harm to [Defendants]." *Viacom Int'l Inc. v. YouTube Inc.*, 253 F.R.D. 256, 259 (S.D.N.Y. 2008). The Court therefore should decline to enter a protective order that would obligate Defendants to accept transmission via means they consider insufficiently secure. *See, e.g.*, *Telebuyer*, 2014 WL 5804334, at *4; *Valencell*, 2016 WL 7217635, at *5.

Defendants expect that Voxer will argue that transmitting source code printouts via hand delivery is unduly burdensome. If so, that argument fails several times over, as any burden is minimal, if not non-existent. *First*, Defendants' proposal impacts only the method of transportation that a *receiving party* must use—it does not restrict a producing party's (e.g., Voxer's) method of transporting its own source code printouts. *Second*, the parties have already negotiated another provision of the protective order that virtually eliminates the need to transport source code printouts. The parties' proposed Protective Order provides for "up to five (5) paper copies" of source code printouts. (Ex. 1 ¶ 9(j).) The purpose of this provision is to give each party an adequate number of copies to distribute amongst its attorneys and expert(s) in the first instance. Voxer identified no reason during the parties' conferrals for why it would need to move Defendants' source code printouts after Voxer's attorneys and expert(s) receive them. Any burden on Voxer is hypothetical at this juncture. *Third*, any claim of financial burden is unavailing: Defendants have offered that, in circumstances where a Defendant elects to require hand carry to deliver printouts to Voxer's experts or otherwise, that Defendant will cover Voxer's hand-carry costs.

In short, confidential source code ranks among the most sensitive materials produced in any litigation. The present dispute is whether Defendants must permit the transmission of their source code by means that they—in their good-faith belief and best judgment—consider insufficiently secure in light of the great sensitivity of these materials. Given these concerns—and Voxer's failure to identify anything more than a *de minimis* inconvenience—Defendants respectfully request that the Court adopt their Section 9(j) proposal.

Respectfully,

/s/ Jennifer Ying                    /s/ Kelly E. Farnan

Jennifer Ying (#5550)           Kelly E. Farnan (#4395)

cc:    Clerk of the Court (via hand delivery)
       All Counsel of Record (via CM/ECF and e-mail)